## FIRST NATIONAL BANK OF GARY v. JOSEFOFF.

[No. 8,267. Filed May 14, 1914. Rehearing denied December 11, 1914.]

1. CONTRACTS.—Receipts.—Deposits of Money for Safe-keeping.— A receipt for money left with another for safe-keeping imports an obligation to pay on reasonable demand, and is a written agreement enforceable at law. p. 322.

2. PLEADING.—Complaint.—Exhibits.—Where a complaint is based upon a written instrument filed as an exhibit or set out in the complaint, the terms of such instrument will control any averment of the complaint in conflict therewith. p. 323.

3. BANKS AND BANKING.— Deposits.— Recovery.— Action.— Complaint.—Where the complaint in an action against a bank to recover money left with an employe of the bank, proceeded on the theory that the money was deposited with the bank and sought recovery upon an implied agreement to return the money on demand, the general averment that the money was deposited in defendant bank was sufficient and was not overcome by the terms of a receipt set out stating that the money was received by defendant's employe personally for safe-keeping, when considered with other allegations showing the manner and circumstances of its execution, that plaintiff was unable to speak or read English and that he was informed by defendant's employe that the receipt was that of the bank. p. 323.

4. PLEADING.—Complaint.—General and Specific Allegations.—The general allegations of a complaint will control unless they are shown to be untrue by the specific allegations. p. 324.

5. EVIDENCE.—Parol Evidence.—Varying Written Contracts.—The rule that a written contract can not be varied by parol evidence applies only to the parties to the contract and does not preclude parol proof that money belonging to plaintiff was deposited by him in defendant bank through one of its employes as its agent, notwithstanding the receipt executed to plaintiff was the personal receipt of such employe. p. 324.

6. BANKS AND BANKING.—*Deposits.—Action to Recover.—Evidence. —Sufficiency.*—In an action against a bank to recover money deposited by plaintiff, evidence showing that plaintiff could neither speak nor read English, .that he took the money to defendant's banking room during banking hours and delivered it to defendant's employe who was sitting at a desk near a window inside that part of the bank which is screened from the public, that such employe was engaged as interpreter and had charge of the foreign exchange department of the bank, that he informed plaintiff that his money was safe and that the bank was good for it, was sufficient to sustain a finding for plaintiff although the receipt given plaintiff was the personal receipt of such employe as for money left with him for safe-keeping. p. 326.

7. BANKS AND BANKING.—*Deposits.—Acts of Agents.*—Any agent of a bank who receives a deposit from a customer within the bank during banking hours, binds the bank, unless the depositor had notice of his lack of power, and the deposit is completed when it passes from the possession of the depositor into the possession of the agent. p. 327.

8. BANKS AND BANKING.—*Deposits.—Acts of Agents.—Liability.*— A bank, by placing an employe in a position of apparent or ostensible authority, accredits him to the public, and if he violates his instructions and loss ensues to a customer who deals with him in ignorance of his real authority, it must be borne by the bank, even though the bank was without fault. p. 327.

9. ESTOPPEL. — *Money Wrongfully Obtained. — Liability.* — Where one of two innocent parties must suffer loss through the wrongful act of a third person in misappropriating money, the loss must fall upon the one who placed such third party in a position by means of which he was enabled to commit the wrong which occasioned the loss. p. 328.

10. BANKS AND BANKING.—*Deposits.—Liability.—Negligence of Depositor.*—In an action against a bank to recover money deposited with an employe of the bank who receipted personally for same, where it appeared that neither plaintiff nor any member of his family could read English, that the position of such employe was such as to inspire confidence on the part of plaintiff, and that his statements to plaintiff were such as to relieve all anxiety on the part of the latter, it can not be said that plaintiff was negligent in failing to have such receipt read and interpreted by some other person, so as to preclude recovery. p. 328.

11. APPEAL.—*Review.—Harmless Error.—Order of Proof.*—Error in admitting in evidence the declarations of an agent without proof ' of the agency is harmless where the existence of the agency is established afterwards. p. 328.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by Dimo Josefoff against the First National Bank of Gary. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*L. V. Cravens,* for appellant.
*Crumpacker, Crumpacker & Tinkham,* for appellee.

LAIRY, C. J.—Appellee as plaintiff brought this action to recover a sum of money alleged to have been deposited by him with appellant. Judgment was rendered in favor of appellee.

The complaint in effect alleges that at the solicitation of Mike Picar, a clerk in appellant bank, who was duly authorized to act for it, appellee deposited in such bank a sum of money in foreign coin equivalent to $452 in United States money. That the appellant bank received the same and that Picar issued a receipt which is set out in the complaint. The complaint also alleges a demand upon appellant for payment and a refusal. The receipt set out in the complaint is as follows:

"Gary, Indiana, January 18th, 1910. Received from Dimo Josefoff One Hundred Nineteen Napolendo for five months safe keeping (Personal) 119 Napolenondors M. Picar."

Appellant asserts that the complaint is defective and that the demurrer thereto should have been sustained because the writing alleged to be a receipt is a written contract and shows on its face that the deposit was not made with the bank as stated in the general averment, but that it was deposited with Mike Picar personally for safe-keeping for a period of five months. An instrument such as the one set out in the complaint has been held by the courts of this State to be more than a mere receipt. It has been held that the law which is a silent factor in every contract, imports into a writing such as this the obligation to pay upon a reasonable demand; and that it is, therefore, a written

agreement enforceable at law and hence a written contract. *Long* v. *Straus* (1886), 107 Ind. 94, 6 N. E. 123, 7 N. E. 763, 57 Am. Rep. 87.

We do not think that this complaint is based upon the written contract as appellant contends. If the complaint counted upon the written contract as such and sought to recover by virtue of it, the complaint would be clearly insufficient as against the bank, unless it contained allegations justifying a reformation, and proceeded upon the theory of reforming the contract and enforcing it as reformed.

2. Where the complaint is based upon a written instrument filed as an exhibit or set out in the complaint, the terms of such instrument will control any averment of the complaint in conflict therewith. *Harrison Bldg., etc., Co.* v. *Lackey* (1897), 149 Ind. 10, 48 N. E. 254; *Huber Mfg. Co.* v. *Wagner* (1906), 167 Ind. 98, 78 N. E. 329.

3. The complaint alleges that appellee was unable to speak or read the English language and that he was unable to read the receipt which was written in that language; that Picar knew these facts and informed appellee that the receipt in question was an acknowledgment from the appellant bank of its receipt of the money and that appellee so understood it and so accepted it. The complaint proceeds upon the theory that the money was deposited with the bank and recovery is sought upon the implied agreement to return the money on demand. Upon this theory, the general averment that the money was deposited in appellant bank is sufficient to make the complaint good in respect to the deposit, unless its force is overcome by other specific allegations of the complaint. When the writing set out in the complaint is considered in connection with the allegations in reference to the manner of its execution and the further allegations in reference to the circumstances under which it was given and the statements which were made at the time, we are clearly of the opinion that the specific allegations do not overcome the general allega-

tion to the effect that the deposit was made in the appellant bank.  The general allegations of a complaint will control unless they are shown to be untrue by specific allegations.  *Cleveland, etc., R. Co.* v. *Cyr* (1909), 43 Ind. App. 19, 86 N. E. 868; *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 82 N. E. 1030.

There was no claim in this case on the part of appellant that the money was not deposited, and the only question for determination was whether the bank was the depository or whether it was deposited with Picar personally.  The written contract purports to be an agreement between appellee and Picar, and, as between them, it is the sole repository of all prior negotiations and can not be varied by parol evidence.  This rule is a salutary one and is supported by principles of public policy as well as by judicial decisions.  Averments that the deposit was, in fact, made with the bank through Picar as its agent, and proof of such averments do not however contradict any written contract between appellee and the bank for there was no written contract as between them.  The rule under consideration applies only to the parties to the contract.  1 Greenleaf, Evidence §279; *Ford* v. *Williams* (1858), 21 How. 287, 16 L. Ed. 36.

In deciding a case very similar to the case at bar, the court of appeals of New York speaking by Andrews, J., uses the following pertinent language:  ''It is insisted, however, that the certificate issued to the plaintiff at the time of the deposit conclusively establishes that the transaction was with Van Campen and upon his sole credit.  The certificate is said to be a written contract, by which alone the right of the plaintiff is to be determined, and that parol proof that the deposit was made with the bank or tending to establish a liability of the bank was inadmissible, as in violation of the rule that parol evidence can not be given to contradict a written instrument.  The rule that when parties have reduced a contract between them to writing, the writing alone,

in the absence of fraud or mistake, is to be referred to, to define their respective rights and liabilities, and that all preliminary negotiations are to be deemed merged in, and if inconsistent therewith superseded, by the written contract, is supported as well by considerations of policy as by judicial decision. But assuming that the certificate signed by Van Campen when accepted by the plaintiff became a written contract between them, parol evidence that the bank received the money as a deposit did not contradict any written agreement between the bank and the plaintiff, for they had made none. The real issue on the trial was whether the bank or Van Campen was the depositary. Unexplained, the fact that the plaintiff accepted the certificate of Van Campen was strong if not conclusive evidence that the bank was not a party to the transaction; but it was evidence only, and was subject to explanation by parol proof, without violating the rule referred to. In *Barry* v. *Ransom* [1855], 12 N. Y. 464, Denio, J., in speaking of the rule, says: 'This is a valuable principle which we would be unwilling to draw in question, but we think it is limited to the stipulations between the parties actually contracting with each other by the written instrument.' The rule does not preclude a party who has entered into a written contract with an agent from maintaining an action against the principal, upon parol proof that the contract was made in fact for the principal, where the agency was not disclosed by the contract, and was not known to the plaintiff when it was made, or where there was no intention to rely upon the credit of the agent to the exclusion of the principal. Such proof does not contradict the written contract. It superadds a liability against the principal to that existing against the agent. That parol evidence may be introduced in such a case to charge the principal, while it would be inadmissible to discharge the agent, is well settled by authority. *Ford* v. *Williams, supra; Higgins* v. *Senior* [1841], 8 M. & W. 834; Parker J., *Short* v. *Spackman* [1831], 2 B.. & Ad. 962; *Taintor* v. *Prender-*

*gast* [1842], 3 Hill 72 [38 Am. Dec. 530] ; *Gates* v. *Brower* [1853], 9 N. Y. 205 [59 Am. Dec. 530].'' *Coleman* v. *First Nat. Bank* (1873), 53 N. Y. 388. The supreme court of Kansas reached a similar result in a case where the facts were very similar and where the same principle is involved. The opinion of the court is by Brewer, J., afterwards eminent as a member of the Supreme Court of the United States, and for this reason it is entitled to great weight. *Lemon* v. *Fox* (1878), 21 Kan. 152.

The only other errors presented by the brief of appellant arise upon the action of the court in overruling appellant's motion for a new trial. The principal question presented under this assignment relates to the sufficiency of the evidence to sustain the finding of the court. It is claimed that the finding is wholly unsupported by evidence to show that Mike Picar at the time he accepted the deposit had any authority from the bank to receive deposits in its behalf, and that therefore the evidence wholly fails to show a deposit with the bank. It would serve no useful purpose to set out the evidence at length in this opinion. It is sufficient to say that it shows that appellee was a Macedonian who could neither speak nor read the English language, and that he took the money constituting the deposit in question to the banking room of appellant and delivered it to Picar whom he found sitting at a desk near a window and inside that part of the bank which is screened from the public. The testimony of the officers of the bank show that Picar was employed by the bank as interpreter to talk with persons who spoke foreign languages and that he had charge of the foreign exchange department of the bank and that it was also his business to sell steamship tickets. The evidence shows that the money was delivered to Picar during banking hours and that at the time of such delivery he informed appellee that his money was safe and that the bank was good for it. The writing set out in the complaint was not introduced in evidence as against appellant, but it appears

that at the time of receiving the money, Picar told appellee that the receipt was just as good as to have the money entered in a book and that he could get the money by presenting the receipt. It further appears from the evidence that appellee could not read the writing and that he never knew its contents until after Picar had left town. It is very apparent from the evidence that appellee believed that he was dealing with the bank in making this deposit and not with Picar personally. "The rule is, that any agent 7. of the bank who receives a deposit from a customer within the bank during banking hours, binds the bank unless the dealer had notice of lack of power. The bank cannot set up a defense that it is not responsible because the deposit was not received or passed through the hands of the receiving teller. A deposit is complete when it passes from the possession of the depositor into the hands and into the possession of the agent of the bank, if at the time of the transaction it was performed within the bank and during banking hours." Magee, Banks and Banking (2d ed.) 287. See, also, Zane, Banks and Banking 207; 1 Bolles, Mod. Law of Banking 431.

It is the apparent or ostensible authority which controls in cases of this kind rather than any special instructions which may have been received by the officers and agents of 8. the bank. By placing Picar in the position in which he was at the time of receiving the money from appellee the bank accredited him to the public; and, if he violated his instructions and a loss ensued, it must be borne by the bank. *Goshorn* v. *Peoples Nat. Bank* (1904), 32 Ind. App. 428, 69 N. E. 185, 102 Am. St. 248; *East River Nat. Bank* v. *Gove* (1874), 57 N. Y. 597; *West* v. *First Nat. Bank* (1880), 20 Hun 408; *Munn* v. *Burch* (1860), 25 Ill. 21; *Ziegler* v. *First Nat. Bank* (1880), 93 Pa. St. 393; *Heim* v. *First Nat. Bank* (1906), 76 Neb. 831, 107 N. W. 1019. Even though it be conceded that the bank was not at fault with reference to the transaction in question and that the appellee was also

blameless, and that the loss was occasioned solely through the fault and misconduct of Picar, still the bank was responsible for Picar being placed in a situation where he was enabled to perpetrate the fraud. It is well settled that where 9. one of two innocent parties must suffer loss through the wrongful act of a third person, the loss must fall upon the one who placed such third party in a position by means of which he was enabled to commit the wrong which occasioned the loss. *McConnell* v. *American Nat. Bank* (1915), 59 Ind. App. ——, 103 N. E. 809; *Judy* v. *Warne* (1913), 54 Ind. App. 82, 102 N. E. 386; *Preston* v. *Witherspoon* (1887), 109 Ind. 457, 9 N. E. 585, 58 Am. Rep. 417; *Lucas* v. *Owens* (1888), 113 Ind. 521, 16 N. E. 196.

It is urged on behalf of appellant that appellee was negligent in failing to have the writing read and interpreted to him by some one in whom he had confidence and that, 10. for this reason, he is not free from fault and can not recover. The evidence in this case shows that appellee could not read the English language and that no member of his family was able to do so. The position of Picar in the bank was such as would inspire confidence on the part of appellee, and his statements to the effect that the money was safe and that the bank was good for it were of such a character as to mislead appellee and to relieve his mind of all anxiety as to the safety of his money. Under such a state of the evidence, it can not be said that the failure of appellee to have the writing read and interpreted to him by some other person in whom he had confidence was such negligence as to preclude him from a recovery.

The trial court over the objection of appellant, admitted evidence of the declarations and statements of Picar without first requiring proof that at the time such state- 11. ments were made he was the agent of appellant. The questions arising upon the admission of this testimony were presented as causes for a new trial and they are now urged as grounds for reversal. It is the better practice

to require the proof of agency before admitting evidence to prove any statement of a person upon the theory that he was the agent of the party sought to be affected by such statements; but, if the agency is afterward established, the error in the order of the admission of such testimony will be regarded on appeal as harmless. *Rowell* v. *Klein* (1873), 44 Ind. 290, 15 Am. Rep. 235; *Trustees, etc.* v. *Bledsoe* (1854), 5 Ind. 133.

We find no reversible error in the record. Judgment affirmed.

Felt, Hottel, Caldwell, JJ., and Shea, P. J., concur, Ibach, J., not participating.

NOTE.—Reported in 105 N. E. 175. As to what transaction effects a deposit in bank and the control in equity in this connection, see 57 Am. Rep. 97. See, also, under (1) 9 Cyc. 298; (2) 31 Cyc. 563; (3, 10) 5 Cyc. 1913 Ann. 521-New; (4) 31 Cyc. 85; (5) 17 Cyc. 749; (6) 5 Cyc. 1913 Ann. 521-New; 1915 Ann. 517-New; (7, 8) 5 Cyc. 516-518; 31 Cyc. 1335; Agency 2 C. J. §218; (9) 31 Cyc. 1237; Agency 2 C. J. §71; (11) 38 Cyc. 1433.