### BOYD *v.* HODSON ET AL.

[No. 17,527.   Filed March 31, 1947.]

*Pack & Van Eseltine; Hogston & Hogston*, and *Charles L. Shadle*, all of Marion, for appellant.

*Russel J. Wildman*, of Peru, and *Robert M. Van Atta*, of Marion, for appellees.

CRUMPACKER, C. J.—The appellant sought damages below for an alleged malicious prosecution by the appel-

lees in instigating and procuring the return of an indictment against her in the United States District Court for the Northern District of Indiana and thus causing her subsequent arrest, imprisonment and prosecution thereunder. The trial court concluded that she failed to prove her case and directed a verdict for the appellees. Through the medium of this appeal we are asked to review such ruling.

By their motion for a directed verdict the appellees admitted the truth of all competent evidence tending to prove the appellant's case together with all reasonable inferences to which such evidence gives rise. *Jackson, Rec.*, v. *Mauck* (1920), 189 Ind. 262, 126 N. E. 851; *Massachusetts Bonding, etc., Co.* v. *Free* (1919), 71 Ind. App. 275, 124 N. E. 716; *Ackerman* v. *Pere Marquette R. Co.* (1915), 58 Ind. App. 212, 108 N. E. 144. It is also well established that a court should not give a pre-emptory instruction unless there is a total failure of evidence and reasonable inference upon at least one essential element of the plaintiff's case. *Massachusetts Bonding, etc., Co.* v. *Free, supra.*

With these principles in mind we have carefully examined the evidence as it is narrated in the appellant's brief which, being unchallenged by the appellees, we accept as accurate. The evidence is wholly undisputed and that which is most favorable to the appellant's case is as follows: Early in June, 1941, numerous letters, of an extremely vulgar character, were mailed in the United States Post Office at Wabash, Indiana, addressed to various residents of the neighboring town of Converse and vicinity. All of them purported to be signed by one Edith Showalter but no such person has been found nor heard of in and about Wabash. The matter having reached the attention of the Post Office Department of

the United States Government, Thomas H. Denton, sheriff of Miami County and W. W. McBroom, a postal inspector in the employ of the federal government, undertook an investigation for the purpose of identifying and finding the person responsible for writing and mailing said letters. During the course of such investigation the appellee Benjamin F. Hodson delivered some of such letters to Sheriff Denton and told him that he believed that they had been written by the appellant. Denton in turn delivered them to Inspector McBroom. The appellee Glen Rich talked with both Sheriff Denton and Inspector McBroom about said letters and delivered several of them to said sheriff and told him he was certain they had been written by the appellant. The appellee Addie Windsor told both of said investigators that she had seen one of the letters which her husband had received through the mail and in her opinion it was written by the appellant. The appellee Oscar E. Bowman also talked with Sheriff Denton and Inspector McBroom and told them that he had not received a letter but the appellee Glen Rich had shown one of them to him. From the composition of such letter and because of certain passages it contained, it was his, Bowman's, opinion the appellant had written it. The appellee Ethan E. Schrock told both Sheriff Denton and Inspector McBroom that in his opinion the appellant is a mental case and there was no doubt in his mind that she had mailed the letters involved. The appellee Helen Lawson told Sheriff Denton and Inspector McBroom that she was acquainted with the appellant's handwriting and was certain that she was the writer of the various letters that had been called to her attention.

On October 9, 1941, a grand jury serving in the District Court of the United States for the Northern Dis-

trict of Indiana, South Bend Division, considered said letters to be lewd, lascivious and obscene and returned an indictment against the appellant charging her with sending one of them through the mail to Mr. and Mrs. B. F. Hatfield and another to Mr. and Mrs. Tom Windsor, all of Converse, Indiana, contrary to the law in such cases made and provided. The appellant was arrested on October 15, 1941, at her home in Converse, taken to South Bend and lodged in jail. The following day she was arraigned, pleaded not guilty and was released on bond. On June 23, 1942, the court sustained a motion to quash said indictment and thereupon prosecution thereunder terminated. At the time of her indictment the appellant was 38 years of age, unmarried, and had lived in and about Converse all her life. She had a common school education, having attended the Jackson Township and Amboy grade schools and Converse High School. She was active in church work and a member of the Ladies' Aid Society of which she at one time had been vice-president. She had served as clerk of one of the election boards in Converse at intervals from 1924 to 1940, and in the latter year served as United States census taker for Jackson Township. She spent $3,000 in defending herself against prosecution under the indictment above described and after her arrest she was dismissed as a Sunday School teacher and was informed that her services as an election board official were no longer wanted, all to her great embarrassment and humiliation.

The Supreme Court has said that in an action for malicious prosecution the plaintiff must prove that (1) the defendant instituted the prosecution or caused it to be instituted; (2) he acted maliciously in so doing; (3) there was no probable cause for instituting it; and (4) the prosecution has

terminated in the plaintiff's favor. *Duckwall* v. *Davis* (1924), 194 Ind. 670, 675, 142 N. E. 113, and cases cited.

Subjected to the above test we find nothing whatever in the evidence that in the remotest degree connects the appellees May Hodson, Doris Zook, Thomas Windsor, Beatrice Helm, Emma Newell and Esther Hawkins with the alleged malicious prosecution here involved and unquestionably each of them was entitled to a directed verdict.

As to the remaining appellees we think the evidence is sufficient to warrant the inference that their statements to the investigators Denton and McBroom played a material part in bringing about the prosecution here involved. It further appears without question that such prosecution has terminated favorably to the appellant. Thus the evidence was sufficient to take the appellant's case to the jury on the first and fourth requirements of essential proof as laid down in the Duckwall case.

Whether or not such evidence shows malice or want of probable cause presents a closer question. There is no evidence of express malice nor does the record disclose any factual background to which malice might be attributed. It is the law, however, that malice may be inferred if there is no probable cause for the prosecution. *McCasland* v. *Kimberlin* (1885), 100 Ind. 121; *Helwig* v. *Beckner* (1897), 149 Ind. 131, 46 N. E. 644, 48 N. E. 788; *Heap* v. *Parrish* (1885), 104 Ind. 36, 3 N. E. 549; *Kelso* v. *Kelso* (1909), 43 Ind. App. 115, 86 N. E. 1001.

The fact that an indictment was returned against the appellant "by the grand jury was in itself presumptive

evidence of probable cause, though subject to be rebutted by proof that it was induced by false testimony or other improper means." *Miller* v. *Willis* (1920), 189 Ind. 664, 128 N. E. 831. See also *The Terre Haute and Indianapolis Railroad Company* v. *Mason* (1897), 148 Ind. 578, 46 N. E. 332, *Scotten* v. *Longfellow* (1872), 49 Ind. 23. The fact that the appellant prior to her indictment had lead an exemplary life and identified herself with respected and worthwhile activities in the community in which she lived, is no proof that the grand jury acted upon false testimony or was influenced by other improper means. The record is silent as to what evidence the grand jury had before it, as to who the witnesses were; and as to all other matters that transpired during its deliberations. Under such circumstances we are bound to presume that there was probable cause for the indictment returned by the grand jury and we find no evidence tending to rebut that presumption. It is true that on June 23, 1942, a motion to quash said indictment was sustained and such action terminated the prosecution in the appellant's favor. It is the law of this state, however, that the termination of a prosecution in favor of the accused is not *prima facie* evidence that the prosecution was malicious or without probable cause. *Helwig* v. *Beckner, supra; Sasse* v. *Rogers* (1907), 40 Ind. App. 197, 81 N. E. 590.

Certainly it cannot be said that one who honestly and in good faith expresses an opinion to an officer, who is investigating the perpetration of a crime, as to who was involved in it, thereby subjects himself to a suit for malicious prosecution if it subsequently develops that the fact is otherwise. *Western Oil Refining Co.* v. *Glendenning* (1930), 90 Ind. App.

631, 156 N. E. 182. In our opinion the evidence in the present case shows nothing more than this.

During the course of the trial the appellant sought to prove her reputation in the community for "truth, veracity, honesty and integrity." The court refused to permit her to do so and she predicates error on that ruling. The error, if any, was harmless, as such evidence, if admitted, would not supply the proof necessary to take her case to the jury.

For lack of evidence tending to prove malice and want of probable cause we are constrained to conclude that the jury was properly instructed to return a verdict for the appellees.

Judgment affirmed.

NOTE.—Reported in 72 N. E. (2d) 46.